**BUSH v. BUSH.**

No. 5587.

Court of Appeals of the District of Columbia.

Argued Nov. 10, 1932.

Decided Jan. 9, 1933.

Alvin L. Newmyer, of Washington, D. C., for appellant.

Joseph A. Burkart and Henry I. Quinn, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a final decree in the Supreme Court of the District entered upon a decree pro confesso.

On May 31, 1927, appellee filed a bill for the cancellation of an assignment and trust agreement dated August 30, 1926, or, in the alternative, for the removal of appellant as trustee. Motion for the appointment of a receiver, and supporting affidavit of appellee, were filed September 27, 1927, and served on appellant October 3, 1927, at Reno, Nev., to which place she had gone for the purpose of securing a divorce from appellee (whom she had married on September 19, 1926).

On November 4, 1927, there was filed an amended bill of complaint containing the allegations and prayers of the original bill, and adding a paragraph. On August 26, 1929, there was filed an amended and supplemental bill of complaint containing substantially the allegations and prayers of the original bill, but adding paragraphs designed to meet changed conditions; that is, the maturity of certain notes to be held in trust, etc. On December 18, 1929, petition to add an additional party defendant was granted. On April 28, 1931, a subpœna was issued, and on May 5, 1931, service was had upon appellant in the District.

On June 10, 1931, a decree pro confesso was taken; no appearance having been entered for appellant. Thereafter, on June 30, following, present counsel for appellant filed a petition to set aside the decree pro confesso. He accompanied this petition with his own affidavit, in which he set forth that he had been retained as counsel subsequent to the entry of the decree, and that his client's failure to answer was attributable to her physical condition.

In opposition to the motion to set aside the decree, counsel for appellee filed his affidavit containing the following statements: On October 12, 1927, appellant's counsel at Reno requested him to send counsel a copy of the bill, which was done; and its receipt was acknowledged in a communication in which counsel requested that further communica-

tions intended for appellant be forwarded to him, and he would see that she received them. In the fall of 1927 a member of the District of Columbia bar called to see appellee's counsel in behalf of appellant. Counsel for appellee urged that counsel for appellant obtain his client's consent to enter an appearance and file an answer in her behalf, that the case might be disposed of expeditiously. After communicating with his client, counsel for appellant notified counsel for appellee that he could not enter an appearance. About two years later, in 1929, a Philadelphia attorney called on counsel for appellee and sought to obtain a compromise. Again counsel for appellant unsuccessfully urged that an appearance be entered and an answer filed. In the spring of 1931, another member of the District of Columbia bar called upon appellee's counsel and stated that he would enter an appearance in a short time and file an answer, but before doing so he desired to know if there was a prospect of compromise. On a number of occasions counsel for appellee urged counsel for appellant to make good his promise to enter an appearance and file an answer. On each occasion a new promise was made.

On May 5, 1931, about a month and a half after the first interview with appellant's then local attorney, process was served on appellant within this jurisdiction. After such service, appellant's counsel requested counsel for appellee to allow him a few days more time than that provided by the rules of court within which to file an answer. This request was granted and the time extended, though not of record, to June 4th. On that day appellant's attorney urged a further delay, and for the first time the illness of appellant was suggested. Appellee's counsel then agreed to wait until June 8th. When that time arrived, counsel for appellee received from counsel for appellant a certificate from an "osteopathic physician" stating that appellant was under his professional care, confined to bed, and unable to appear in court. At the same time appellant's counsel advised counsel for appellee that he had informed appellant that he could not represent her further, and urged appellee's counsel to wait until June 10th before taking a decree pro confesso, and that in the meantime counsel would advise appellant that unless an answer was filed by that time a decree pro confesso would be taken.

In opposition to the foregoing affidavit of counsel for appellee, counsel for appellant, on October 14, 1931, filed an additional affidavit in support of the motion to vacate and set aside the decree. This affidavit was ac-companied by a proposed answer to the merits of the bill. In his affidavit counsel stated that appellant, at the time process was issued against her, and continuously up to the date of the motion to vacate the pro confesso decree, "was under medical treatment and a patient in an invalid home and had conferred with an attorney to represent her and depended upon him to obtain an extension of time for the filing of her answer until her health permitted a preparation of her defense, but said attorney did not enter an appearance for her and permitted the pro confesso to be entered and upon the discovery thereof, the said Sarah Salus (appellant) for the first time requested affiant to represent her"; that counsel has a certificate from the Mayo Clinic, of Rochester, Minn., to the effect that appellant "was a patient at said clinic until the latter part of December, 1928, and the first part of January, 1929"; that counsel has a further certificate from Dr. Maurice Chesler, of Atlantic City, N. J., stating that appellant had been under his care from July, 1930, to February, 1931. "Affiant further says that he saw the said Sarah Salus on or about June 11, 1931, at the invalid home where she was confined to bed and learned that she had been an inmate of said home and confined to bed for some time and received medical treatment in the District of Columbia and elsewhere from the date the subpoena was served upon her in April, 1931, and prior and subsequent to that time."

It is settled law that an application to open or vacate a judgment is addressed to the sound legal discretion of the trial court (Hallowell v. Darling, 32 App. D. C. 405), and, while that court may set aside a decree pro confesso, "the party in default should show good cause before the default should be set aside." Clifton v. Tomb (C. C. A.) 21 F.(2d) 893, 897; Belt v. Bowie, 65 Md. 350, 4 A. 295. In the present case the bill was filed in May, 1927, and it was not until May, 1931, a period of four years, that it was possible to make service upon appellant. About a month and a half before such service, local counsel, after making overtures looking to a compromise, advised counsel for appellee that he would enter an appearance for his client in a short time and file an answer. This assurance was repeated on numerous occasions, without any suggestion that appellant was ill. It definitely appears that even after service of process appellant's then counsel again promised to file an answer, and that he asked and obtained the indulgence of appellee's counsel for more time than the rules allowed. On June

8, 1931, he notified counsel for appellee that he had told his client that he could no longer represent her, and sought and obtained a further delay until June 10th. He further stated that he would advise his client that unless an answer was filed by that time a decree pro confesso would be taken. The motion to set aside is based solely upon the affidavits of present counsel, who did not see appellant until after the decree pro confesso was entered. The failure to file an affidavit of his client is significant. Totten & Bro. v. Nance, 3 Tenn. Ch. 264, 266. The failure to file an affidavit of a physician is equally significant. Counsel saw his client on June 11, 1931, and in his second affidavit he states that she had been an inmate of an invalid home and confined to her bed for "some time"; a very indefinite statement.

[4, 5] If satisfied of the good faith of the applicant for the setting aside of a decree pro confesso, the trial court should be liberal in the consideration of his application, but, after that court has exercised its discretion, the reviewing court ought not to interfere unless a plain case of an abuse of discretion is made out. In the present case no abuse of discretion has been shown. On the evidence the court below was justified in reaching the conclusion, as evidently it did, that appellant had not acted in good faith.

It is further urged that the court erred in entering a final decree. It is contended that, although the final decree recites that "upon consideration of the amended and supplemental bill of complaint" and "the decree pro confesso entered thereon," the record fails to show the service of any subpœna based on the amended and supplemental bill. This is in direct conflict with the averment in counsel's affidavit of October 14, 1931, wherein he says: "That it appears from the docket entries in this cause that the amended and supplemental bill of complaint upon which the pro confesso was entered was filed August 26, 1929, and no process issued thereon against defendant, Sarah Salus, until April 28, 1931, and service had on said named defendant May 5, 1931, and that the decree pro confesso was entered June 10, 1931, and motion to vacate same filed June 30, 1931, prior to the expiration of the term." The exhibit attached to the affidavit is entitled, "Answer of Defendant Sarah L. Salus to amended and supplemental bill of complaint." It is apparent, therefore, that the present contention is an afterthought, at variance with the actual facts.

Decree affirmed, with costs.

Affirmed.